1   FRANCIS M. GREGOREK (144785)
    BETSY C. MANIFOLD (182450)
2   FRANCIS A. BOTTINI, JR. (175783)
    RACHELE R. RICKERT (190634)
3   WOLF HALDENSTEIN ADLER
      FREEMAN & HERZ LLP
4   Symphony Tower
    750 B Street, Suite 2770
5   San Diego, CA 92101
    Telephone:  619/239-4599
6   Facsimile:  619/234-4599

7   Attorneys for Plaintiff

8   [Additional Counsel Appear On Signature Page]

9

10                 UNITED STATES DISTRICT COURT

11

12                 NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| JOSHUA TEITELBAUM, in the right of and for the benefit of Novellus Systems, Inc., | CASE NO. **C 06 3514** |
| Plaintiff, | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |
| v. | |
| RICHARD S. HILL, JEFFREY C. BENZING, D. JAMES GUZY, GLEN G. POSSLEY, J. DAVID LITSTER, TOM LONG, ROBERT H. SMITH, WILLIAM R. SPIVEY, NEIL R. BONKE, YOUSSEF A. EL-MANSY, YOSHIO NISHI, ANN D. RHOADS, AND DELBERT A. WHITAKER, | |
| Defendants, | |
| and | |
| NOVELLUS SYSTEMS, INC., | |
| Nominal Defendant. | JURY TRIAL DEMANDED |

1    Plaintiff, Joshua Teitelbaum ("Teitelbaum"), by and through his attorneys, derivatively on

2   behalf of Novellus Systems, Inc. ("Novellus" or the "Company"), alleges upon personal

3   knowledge as to himself and his own acts, and upon information and belief as to all other matters,

4   based upon, *inter alia*, the investigation conducted by and through his attorneys, which included,

5   among other things, a review of Securities and Exchange Commission ("SEC") filings, news

6   reports, press releases, and other publicly available documents regarding Novellus as follows:

7                                    **SUMMARY**

8           1.      Plaintiff, derivatively on behalf of Nominal Defendant Novellus, seeks relief for the

9   damages sustained, and to be sustained by Novellus, against its Chief Executive Officer, its

10  Executive Vice President and Chief Business Officer, and certain members of its Board of

11  Directors ("Board") for violations of state and federal law, including their breaches of fiduciary

12  duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, and

13  violations of Sections 10(b) and 14(a) of the Securities and Exchange Act of 1934 (the "Exchange

14  Act"), which occurred between January 1, 1997 and the present (the "Relevant Period").

15          2.      Defendant Richard S. Hill ("Hill"), the Company's Chief Executive Officer, and

16  Jeffrey C. Benzing ("Benzing"), the Company's Executive Vice President and Chief Business

17  Officer, have engaged in certain transactions, including the exercise of back-dated options, to reap

18  a windfall of millions of dollars in unlawful profits at the expense of the Company.

19          3.      A stock option grant awarded to an employee of a corporation allows the employee

20  to purchase company stock at a specified price – referred to as the "exercise price" – for a

21  specified period of time.  Stock option grants are issued as part of employees' compensation

22  packages to create incentives for them to boost profitability and stock value. When an employee

23  exercises an option, he or she purchases the stock from the Company at the exercise price,

24  regardless of the stock's price at the time the option is exercised.

25          4.      The unlawful conduct occurred while Defendants were directing the Company.

26  These Defendants authorized or failed to halt the back-dating of options in dereliction of their

27  fiduciary duties to the Company as directors, thus causing or allowing the Company to suffer

28  hundreds of millions of dollars in harm.

5.      Options are required to be priced at the price of the Company stock on the day of the grant. If an option is back-dated to a day on which a market price was lower than the price on the day the option is granted, then the employee pays less and the company gets less money for the stock when the option is exercised. Furthermore, the purchaser of the option gets a greater compensation than that to which he or she is entitled. Such conduct is unlawful.

6.      On May 22, 2006, a Merrill Lynch Note, titled "Options Pricing – Hindsight is 20/20," written by semiconductor industry analyst, Joe Osha (the "Merrill Lynch Note"), identified several companies that were "at risk" for stock options back-dating, including Nominal Defendant, Novellus. The report provided a chart that specifically identified the alleged "at risk" stock option grants as those belonging to Defendant Hill on twelve occasions and Defendant Benzing on three occasions. Novellus had fifteen "at risk" stock option grant dates.

7.      Back-dating the options violated Novellus's stock option plans. Back-dating the options also breached Defendants' fiduciary duties of care, loyalty, and good faith to Novellus.

8.      Defendants' conduct has unjustly enriched Novellus's top executives, including Defendants Hill and Benzing, and has exposed the Company to great expense and liability, to the detriment of Novellus and its shareholders.

## PARTIES

9.      Plaintiff Teitelbaum is a New York state resident and has owned Novellus stock during the Relevant Period, and continues to own the Company's common stock.

10.     As a current holder of Novellus common stock and a holder during the period of the wrongs alleged herein, and pursuant to Fed. R. Civ. P. 23.1, Plaintiff has standing to assert these claims on behalf of the Company and will fairly and adequately protect the interests of the Company and its other stockholders.

11.     Defendant Hill has been Chief Executive Officer ("CEO") and a member of the Board since December 1993. In May 1996, he was appointed Chairman of the Board. Hill personally benefited from the back-dated stock option grants described herein at the Company's expense. In 2005, Hill was awarded 150,000 options at an exercise price of $24.61. And, as of December 31, 2005, his exercisable options were valued at $1,569,169.00. Hill resides in

1    Atherton, California.

2         12.    Defendant Benzing has been Executive Vice President and Chief Business Officer

3    of the Company since March 2004.  He joined the Company in November 1988 as Director of

4    Special Projects.  From July 1992 through June 1999, he served as the Company's Vice President

5    in charge of Product Development, from July 1999 through December 2001 he served as

6    Executive Vice President, Systems Development, Engineering and Manufacturing Operations, and

7    from January 2002 through February 2004 he served as Executive Vice President of the

8    Deposition Business Group.  Benzing personally benefited from the back-dated stock option

9    grants described herein at the Company's expense.  In 2005, Benzing was awarded 40,000

10   options.  And, as of December 31, 2005, his exercisable options were valued at $420,996.00.

11   Benzing resides in Saratoga, California.

12        13.    Defendants Hill and Benzing are sometimes hereinafter referred to as the

13   "Management Defendants."

14        14.    Defendant D. James Guzy ("Guzy") was appointed to the Board in 1990, and

15   served as a member of the Board until April 16, 2004.  During the Relevant Period, he served as a

16   member of the Audit Committee and the Stock Option and Compensation Committee.  Guzy

17   resides in Menlo Park, California.

18        15.    Defendant Glen G. Possley ("Possley") was appointed to the Board in 1991.

19   During the relevant period, Possley served on the Audit Committee, the Stock Option and

20   Compensation Committee and the Technology Committee.  He is currently a member of the Audit

21   Committee.  Possley resides in Morgan Hill, California.

22        16.    Defendant J. David Litster ("Litster") was appointed to the Board in 1998.  During

23   the relevant period, Litster served on the Audit Committee.  He currently serves on the Board, as

24   the Chair of the Stock Option and Compensation Committee and as a member of the Governance

25   and Nominating Committee.  Litster resides in Cambridge, Massachusetts.

26        17.    Defendant Tom Long ("Long") was appointed to the Board in 1995 and served

27   until 2002.  During his tenure on the Board, Long served on the Audit Committee and the Stock

28   Option and Compensation Committee.  Long resides in Clackamas, Oregon.

18.    Defendant Robert H. Smith ("Smith") is a former Executive Vice President of the Company and was appointed to the Board in 1995. He served on the Board until September 2002. Smith's residence is unknown.

19.    Defendant William R. Spivey ("Spivey") was appointed to the Board in May 1998. During his tenure on the Board, Spivey served on the Audit Committee, the Stock Option and Compensation Committee and the Governance and the Nominating Committee. Spivey currently serves on the Stock Option and Compensation Committee and is the Governance and Nominating Committee Chair. Spivey resides in Flower Mound, Texas.

20.    Defendant Neil R. Bonke ("Bonke") was appointed to the Board in April 2004. Mr. Bonke currently serves on the Audit Committee. Bonke resides in Saratoga, California.

21.    Defendant Youssef A. El-Mansy ("El-Mansy") was appointed to the Board in April 2004. He currently serves on the Stock Option and Compensation Committee and the Governance and Nominating Committee. El-Mansy resides in Beaverton, Oregon.

22.    Defendant Yoshio Nishi ("Nishi") was appointed to the Board in May 2002. He currently serves on the Stock Option and Compensation Committee and the Governance and Nominating Committee. Nishi resides in Los Altos, California.

23.    Defendant Ann D. Rhoads ("Rhoads") was appointed to the Board in February 2003. She is currently the Audit Committee Chair. Rhoads resides in Rancho Santa Fe, California.

24.    Defendant Delbert A. Whitaker ("Whitaker") was appointed to the Board in May 1998. During his tenure on the Board, Whitaker was a member of the Audit Committee, the Stock Option and Compensation Committee and the Governance and Nominating Committee. He is currently a member of the Audit Committee. Whitaker resides in Dallas, Texas.

25.    Defendants Guzy, Possley, Litster, Long, Smith, Spivey, Bonke, El Mansy, Nishi, Rhoads and Whitaker are sometimes collectively referred to as the "Director Defendants."

26.    Nominal Defendant Novellus is a California corporation with its principal executive offices at 4000 North First Street, San Jose, California 95134. Novellus develops, manufactures, sells and supports equipment used in the fabrication of integrated circuits, which are

1   commonly called microchips or chips.  The customers for Novellus' products manufacture chips

2   for sale or for incorporation in their own products, or provide chip-manufacturing services to third

3   parties.  Novellus trades on the NASDAQ under the symbol "NVLS."

4   **JURISDICTION AND VENUE**

5   27.   This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C.

6   §1331 because Plaintiff's claims arise in part under the Constitution and the laws of the United

7   States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).  Jurisdiction

8   over the subject matter of this action is also conferred upon this Court by Section 27 of the

9   Exchange Act, 15 U.S.C. Section 78aa.  Additionally, this Court has jurisdiction over this action

10  pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states

11  and the matter in controversy exceeds $75,000, exclusive of interests and costs. This action is not

12  a collusive action designed to confer jurisdiction on a court of the United States that it would not

13  otherwise have.

14  28.   Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act

15  and 28 U.S.C. §1391(a)(1) because one or more of Defendants either resides or maintains

16  executives offices in this Judicial District, and a substantial portion of the acts and transactions

17  constituting the violations of law alleged in this Complaint occurred in substantial part in this

18  Judicial District.  Moreover, Defendants have received substantial compensation in this Judicial

19  District by doing business here and engaging in numerous activities that had an effect in this

20  Judicial District.

21  **OBLIGATIONS AND DUTIES OF THE DEFENDANTS**

22  29.   By reason of their positions as directors, officers, and/or fiduciaries of Novellus

23  and because of their ability to control the business, corporate and financial affairs of the Company,

24  each of the Defendants owed Novellus the duty to exercise due care and diligence in the

25  management and administration of the affairs of the Company and in the use and preservation of

26  its property and assets, and owed the duty of loyalty, including full and candid disclosure of all

27  material facts related thereto.  Further, Defendants owed a duty to Novellus to ensure that

28  Novellus operated in compliance with all applicable federal and state laws, rules, and regulations,

- 6 -

1  and that Novellus not engage in any unsafe, unsound, or illegal business practices.  The conduct of

2  Defendants complained of herein involves knowing violations of their duties as directors of

3  Novellus, and the absence of good faith on their part, which Defendants were aware or should

4  have been aware, posed a risk of serious injury to Novellus.

5         30.    To discharge these duties, Defendants were required to exercise reasonable and

6  prudent supervision over the management, policies, practices, controls, and financial and corporate

7  affairs of Novellus.  By virtue of this obligation of ordinary care and diligence, Defendants were

8  required, among other things, to:

a.     manage, conduct, supervise, and direct the employees, businesses and affairs of Novellus in accordance with laws, rules and regulations, and the charter and by-laws of Novellus;

b.     neither violate nor knowingly or recklessly permit any officer, director or employee of Novellus to violate applicable laws, rules and regulations, and to exercise reasonable control and supervision over such officers and employees; ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by Novellus;

c.     remain informed as to how Novellus was, in fact, operating, and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice, including, but not limited to, maintaining and implementing an adequate system of financial controls to gather and report information internally, to allow Defendants to perform their oversight function properly to prevent the use of non-public corporate information for personal profit;

d.     supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by Novellus, and to examine and evaluate any reports of examinations or investigations concerning the practices, products or conduct of officers of Novellus, and to make full and accurate disclosure of all material facts, concerning *inter alia*, each of the subjects and duties set forth above; and

e.     preserve and enhance Novellus's reputation as befits a public corporation and to maintain public trust and confidence in Novellus as a prudently managed institution fully capable of meeting its duties and obligations.

       31.    Defendants breached their duties of loyalty, due care and/or good faith by allowing

Defendants to cause, or by themselves causing, the Company to misrepresent its financial results,

- 7 -

1  as detailed herein, and/or by failing to prevent Defendants from taking such illegal actions.

2  **NOVELLUS' STOCK OPTION PLANS**

3      32.    The Company's Amended and Restated 1992 Stock Option Plan (the "1992 Plan")

4  provides for the issuance of both Incentive Stock Options, which may be granted to employees,

5  and Non-Statutory Stock Options, which may be granted to employees, directors and consultants.

6  The exercise price of all stock options granted under the 1992 Plan *must equal at least the fair*

7  *market value* of the common stock of the Company on the date of grant.  Vesting and exercise

8  provisions are determined by the Board.  The fair market value of the common stock on a given

9  date is determined by the Board based upon the last sale price of the common stock on the

10 NASDAQ National Market System as of such date.   Options granted under the 1992 Plan

11 generally become exercisable over a four-year period beginning on the date of grant. Options

12 granted under the 1992 Plan have a maximum term of ten years.

13     33.    In 2001, the Board adopted The Novellus Systems, Inc. 2001 Stock Incentive Plan

14 (the "2001 Plan"). The 2001 Plan provides for the issuance of both Incentive Stock Options, which

15 may be granted to employees, and Non-Statutory Stock Options, which may be granted to

16 employees, directors and consultants.  It is administered, with respect to grants to Directors,

17 Officers, Consultants, and other Employees, by the plan administrator (the "Administrator"),

18 defined as the Board or one (1) or more committees designated by the Board.  The 2001 Plan

19 authorizes the Administrator to grant awards at an exercise price determined by the Administrator,

20 however, such price must not be less than one hundred percent (100%) (or one hundred ten

21 percent (110%), in the case of Incentive Stock Options granted to any grantee who owns stock

22 representing more than ten percent (10%) of the combined voting power of the Company) of the

23 Fair Market Value of the Common Stock on the date the Option is granted.  Options granted under

24 the 2001 Plan generally become exercisable over a four-year period beginning on the date of grant

25 and have a maximum term of ten years.

26     34.    As of December 31, 2005, there were options outstanding to purchase 8,401,311

27 shares of the Company's Common Stock under the 1992 Plan at a weighted average exercise price

28 of $31.75 per share and no shares available for future issuance.  As of December 31, 2005, there

were options outstanding to purchase 5,296,641 shares of the Company's Common Stock under the 2001 Plan at a weighted average exercise price of $26.89 per share and 4,402,459 shares available for future issuance.

**The Management Defendants**

35.   Defendant Hill was hired as CEO of the Company in December 1993. As part of his compensation, Hill received stock option grants from the Company under the 1992 Plan and the 2001 Plan. According to the Merrill Lynch Note, *twelve* of Hill's grants from 1997 through 2002 were considered suspicious because they generated "excess returns" within 20 days of the grant of stock options. The following examples demonstrate these excessive returns:

a.   The Company awarded Defendant Hill two stock option grants in 1997. Allegedly, on January 2, 1997, he was awarded an option to purchase 300,000 shares with an exercise price of $9.25. But a mere twenty days later, on January 22, 1997, the stock climbed almost four dollars to $13.08.

b.   In 1998, the Company awarded Defendant Hill two stock option grants. On July 17, 1998, he was purportedly awarded an option to purchase 324,000 shares at $12.29. A few weeks later, by August 6, 1998, the stock rose to $13.58. On September 21, 1998, the Company purportedly awarded him an option to purchase 276,000 shares at $7.90. Just a month later, the stock climbed to $13.00.

c.   In 1999, the Company awarded Defendant Hill two stock option grants. He was allegedly awarded an option to purchase 56,250 shares on January 4, 1999 at a price of $17.33 per share. On January 15, 1999, just 11 days later, the stock reached $24.80. He also received a grant to purchase 354,000 shares at a price of $25.56, purportedly on December 16, 1999. Shortly after this grant, on December 27, 1999, the stock reached its yearly high of $41.21.

d.   In 2000, Defendant Hill allegedly received a December 15, 1999 grant to purchase 300,000 shares of stock at an exercise price of $30.25. By the end of the month, on the 29th of December, the stock price reached $35.93.

e.   In 2001, the Company awarded Defendant Hill three stock option grants. The first was purportedly a September 29, 2000 grant for Hill to purchase 100 shares at $28.00. This alleged grant preceded a significant stock rise and by October 25, 2001, the stock was trading at $36.23. Hill allegedly received two separate grants on December 20, 2001. One was a grant to purchase 2,583 shares and the second to purchase 297,417 shares, both at an exercise price of $38.70. This alleged grant also preceded a sharp stock rise to

- 9 -

$41.32 by December 28th of that year.

f. In 2002, the Company awarded Defendant Hill three grants. The first was purportedly awarded to him on April 11th, 2002 to purchase 122,459 shares at an exercise price of $47.95 and the second on April 12th, 2002 to purchase 11,893 shares at an exercise price of $48.71. A few business days later, on April 16th, the stock reached $53.46. Defendant Hill was also allegedly awarded a stock option grant on December 13, 2002 to purchase 165,648 shares at an exercise price of $29.24. Just a few weeks later, the stock reached $34.74 on January 10, 2003.

36. Defendant Benzing was hired by the Company in November 1998 and assumed his current position of Executive Vice President and Chief Business Officer in March 2004. According to the Merrill Lynch Note, three of Hill's grants from 1997 through 2002 were considered suspicious because they generated "excess returns" within 20 days of the grant of stock options:

a. On December 19, 1997, the Company allegedly awarded Defendant Benzing with an option to purchase 135,000 shares with an exercise price of $11.08. This grant preceded a sharp rise to $15.48 on February 23, 1998.

b. On December 17, 1998, the Company purportedly awarded Defendant Benzing an option to purchase 150,000 shares of stock with an exercise price of $16.42. Just three days later, the stock climbed almost three dollars to $19.21.

c. On December 16, 1999, the Company allegedly awarded Defendant Benzing an option to purchase 120,000 shares at $25.56. This purported award preceded a substantial run up in the value of the stock. By the 31st of December, the stock leapt to $40.84.

**The Consequences**

37. As a result of the back-dating and other manipulation of options issued to the Management Defendants, they have been unjustly enriched in the amount of hundreds of millions of dollars at the expense of the Company. The Company has received and will receive less money from the Management Defendants when they exercise their options at prices substantially lower than they would have if the options had not been back-dated.

38. The practice of back-dating stock options not only lined the pockets of the Company's executives at the direct expense of the Company, but also resulted in the overstatement of the Company's profits. This is because options priced below the stock's fair

market value when they were awarded brought the recipient an instant paper gain that must be accounted for as additional compensation and treated as an expense to the Company.   The Company must account for the options at a lower price, and will have to restate its results to reflect the previously unreported expenses.

39.     The practice of back-dating options has caused the Company to suffer additional adverse consequences, including (i) the drop in its stock price attributable to the market's loss of confidence in the Company's management, thus increasing the Company's cost of borrowing and otherwise harming its operations, (ii) adverse tax consequences, and (iii) exposure to the cost of defending against and potential liability for regulatory actions and private securities class actions.

40.     Defendants have caused the Company to state publicly that there was no wrongdoing with respect to the manipulation of option grants, and have made no effort to undo or recover previous grants.

41.     Indeed, on May 23, 2006, in a press release, the Company stated that it found no irregularities in its stock options granting practices.

### THE NOVELLUS BOARD

42.     During the relevant period, the Company, through the actions of its Board of Directors and its Stock Option and Compensation Committee, granted stock options for the purchase of millions of shares of the Company's common stock along with certain other perks to the Management Defendants.

43.     Director Defendants misrepresented and actively concealed and caused the Company to misrepresent and actively conceal in public SEC filings that the stock options were priced at no less than the fair market value of the stock on the date of the grant, thereby affirmatively concealing the claims set forth herein. The stock option plans, referenced above, were exhibits that were incorporated by reference each year in the Company's Annual Reports on Form 10-K.   Also, the Management Defendants' compensation, including their stock option grants, were disclosed in the Company's yearly proxy statements promulgated in connection with the Company's annual meetings. Director Defendants' misrepresentations about their stock option pricing practices were known to be false or were made in reckless disregard of its truth or falsity,

1  and the concealment could not have been discovered through reasonable diligence by the typical

2  shareholder, prior to the publication of the Merrill Lynch Note.

3      44.    Contrary to the foregoing contractual provisions and public disclosures, as shown

4  by the pattern of grant dates that were highly favorable to Defendants Hill and Benzing, the stock

5  options were not, in fact, priced on the date of the grant, but were in fact back-dated, or where

6  granted at a low price in complete disregard of the actual price of the stock on the day of the grant.

7      45.    Director Defendants stood in a fiduciary relationship with the Company's

8  shareholders and thereby owed them duties of due care and loyalty. These duties require the Board

9  to act in good faith, with the care an ordinarily prudent person in a like position would exercise

10  under similar circumstances, and in a manner he or she reasonably believes to be in the best

11  interest of the Company and its shareholders.

12      46.    Director Defendants violated their fiduciary duties to the Company by failing to act

13  with due care, loyalty and good faith when they either expressly authorized the practice of back-

14  dating options, or in conscious abrogation of their fiduciary duties, permitted it to occur.

15      47.    Instead of properly disclosing these improper stock option back-dating practices

16  and the corresponding understatement of compensation costs, Director Defendants caused or

17  allowed these practices to continue unabated throughout the Relevant Period.

18      48.    Director Defendants' breaches of their fiduciary duties have exposed the Company

19  to a number of harms including: the expense of internal investigation; the expense of SEC

20  investigations; the potential liability under tax laws and federal securities laws; the possibility of

21  having to restate financial results; and liability to stock purchasers.

22  **Committees of the Board**

23      49.    The standing committees of the Novellus Board include: (i) the Audit Committee;

24  (ii) the Stock Option and Compensation Committee; and, (iii) the Governance and Nominating

25  Committee.

26  ***Stock Option and Compensation Committee***

27      50.    Defendants Guzy, Poppelen, Possley, Litster, Long, Spivey, El-Mansy, Nishi and

28  Whitaker were members of the Stock Option and Compensation Committee during the Relevant

1 | Period.

2 |     51.    Defendants Guzy, Poppelen, Possley, Litster, Long, Spivey, El-Mansy, Nishi and
3 | Whitaker were members of the Stock Option and Compensation Committe during the Relevant
4 | Period.   Defendant Litster currently serves as the Committee's Chair.   As members of this
5 | Committee, these Defendants were responsible for administering the issuance of option grants
6 | under the Company's stock option plans.  Under the Stock Option and Compensation Committee
7 | Charter, the Committee is responsible for reviewing and making recommendations to the Board
8 | where appropriate and approving all forms of compensation to be provided to the executive
9 | officers and directors of the Company, including stock compensation and loans, all bonus and
10 | stock compensation to employees, and all stock compensation to consultants of the Company.

11 |     52.    Accordingly, the members of Novellus's Stock Option and Compensation
12 | Committee are responsible for administering the issuance of option grants under the Company's
13 | 1992 and 2001 Stock Option Plans. Therefore, Defendants Guzy, Possley, Litster, Long, Spivey,
14 | El-Mansy, Nishi and Whitaker were responsible for reviweing the stock options grants to Novellus
15 | executives.   These Defendants did not fulfill this duty, therefore causing or allowing the
16 | Company's executives to obtain unreasonable and unreported compensation via the back-dating of
17 | stock option grants.

18 | **Audit Committee**

19 |     53.    Defendants Guzy, Possley, Long, Spivey, Bonke, Rhoads and Whitaker were
20 | members of the Audit Committee during the Relevant Period. Defendant Rhoads is the current
21 | chairman of the Audit Committee.

22 |     54.    As members of the Audit Committee, Defendants Guzy, Possley, Long, Spivey,
23 | Bonke, Rhoads and Whitaker had a special duty to know and understand this material information
24 | regarding the stock option grants as set out in the Audit Committee's charter, which provides that
25 | the Audit Committee is responsible to oversee the accounting and financial reporting processes of
26 | the Company and audits of the financial statements of the Company and the Company's internal
27 | control over financial reporting.   The Committee also has the power to conduct or authorize
28 | investigations into matters within its scope of responsibilities.

- 13 -

55.     Under the Audit Committee Charter, the responsibilities of the Audit Committee shall include, *inter alia,* (i) reviewing the policies and procedures adopted by the Company to fulfill the Company's responsibilities regarding the fair and accurate presentation of financial statements in accordance with GAAP and applicable rules and regulations of the Securities and Exchange Commission and the National Association of Securities Dealers applicable to Nasdaq-listed issuers; (ii) overseeing the Company's accounting and financial reporting processes; (iii) overseeing audits of the Company's financial statements and internal control over financial reporting; (iv) confirming management's awareness that it is management's responsibility for developing and maintaining adequate internal controls and disclosure controls over financial reporting; and (v) reviewing all certifications provided by the Company's principal executive officer and principal financial officer pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act.

56.     The members of the Audit Committee knew or should have known that Novellus's financial statements were inaccurate and certain stock option grants were improper, and thereby permitted or condoned the unlawful practices described herein. Accordingly, Defendants Guzy, Possley, Long, Spivey, Bonke, Rhoads and Whitaker, through their improper execution of their duties and responsibilities as members of the Novellus Audit Committee, knew of or recklessly disregarded the unlawful practices at Novellus described herein.

57.     The improper dating of stock option grants, in turn, caused a misstatement of Novellus's earning because the compensation costs in connection with the misdated options were not properly recorded in violation of GAAP.

58.     Director Defendants had ample opportunity to discuss this material information with the Options Defendants at any Board meetings that occurred during the Relevant Period, as well as at meeting of committees of the Board.

59.     Despite these duties, Director Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the following improper statements to be disseminated by Novellus to the investing public and the Company's shareholders during the Relevant Period.

60.     Instead of properly disclosing these improper stock option back-dating practices

and the corresponding understatement of compensation costs, Director Defendants caused or allowed these practices to continue unabated throughout the Relevant Period.

## DERIVATIVE ACTION AND DEMAND FUTILITY ALLEGATIONS

61.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the injuries suffered, and to be suffered, by the Company as a direct result of the breach of fiduciary duty, waste of corporate assets, and unjust enrichment alleged herein. The Company is named as a nominal Defendant solely in a derivative capacity.

62.     Plaintiff will adequately and fairly represent the interest of the Company in enforcing and prosecuting its rights.

63.     Plaintiff did not make demand on the Board to bring this action on behalf of the Company because such a demand would have been a futile, wasteful and useless act for the following reasons:

(a)     During the Relevant Period, Defendant Hill was the recipient of the stock option grants, which Plaintiff alleges were back-dated. Because Hill received a personal financial benefit from the challenged transactions, he is interested and demand upon him is futile;

(b)     Defendant Benzing was the recipient of the stock option grants, which Plaintiff alleges were back-dated.  Because Hardin received a personal financial benefit from the challenged transactions, he is interested and demand upon him is futile;

(c)     All of the Director Defendants authorized, approved, ratified or have failed to rectify some or all of the back-dated stock option grants at issue here and are named as Defendants herein;

(d)     The Stock Option and Compensation Committee was at all relevant times responsible for overseeing the Company's compensation, employee benefit and stock option plans. It was also responsible for supervising incentive compensation programs for the Company's employees. The members of the Stock Option and Compensation Committee, and the Board by its approval of their recommendations, enabled, or through conscious abdication of duty, permitted the Company to back-date stock option grants issued to the Management Defendants. By such actions, Defendants breached their fiduciary duties to the Company. The back-dating of stock

- 15 -

option grants was in direct violation of the stock option plans.  Thus, there is reasonable doubt that the members of the Stock Option and Compensation Committee are disinterested;

(e)     The back-dating of options as alleged herein was unlawful and not within Defendants' business judgment to acquire, authorize, ratify or facilitate;

(f)     There was no basis or justification for back-dating the stock option grants. It was designed solely to benefit the Management Defendants in a manner that was inconsistent with the Company's public disclosures, to the detriment of the Company.  Hence, the transactions constituted a waste of corporate assets, and could not have been the product of the proper exercise of business judgment by the Defendants;

(g)     During the Relevant Period, the Defendants authorized the filing of Proxy Statements, in support of their nomination as Directors, which failed to disclose that the Management Director's stock options had been back-dated.  They also authorized the filing of shareholder approved stock option plans, which misrepresented that the options carry the stock price of the day of the award.  Any suit by the Defendants to remedy the wrongs complained of herein could also expose them to suit for securities fraud and proxy violations; thus, they are hopelessly conflicted in making any supposedly independent determination of a demand that they cause the Company to bring this action;

(h)     All of the Defendants signed one or more of the Company's Annual Reports during the Relevant Period, which contained the Company's financial statements, which failed to account for the back-dated stock options as compensation and an expense of the Company. As a result, those financial statements of the Company may have overstated its profits and may need to be restated.  Any suit by the Defendants to remedy the wrongs complained of herein could also expose them to suit for securities fraud; thus, they are hopelessly conflicted in making any supposedly independent determination of a demand that they cause the Company to bring this action;

(i)     All of the Defendants participated in, approved, or through abdication of duty, permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company stockholders and/or acting with negligence and gross

1 negligence disregarded the wrongs complained of herein, and therefore are not disinterested

2 parties;

3          (j)     On information and belief, Defendants are protected against liability for

4 breaches of fiduciary duty alleged in the Complaint by directors' and officers' liability insurance

5 policies. As a result, if Defendants were to cause the Company to sue itself or certain officers of

6 Novellus, there would be no directors' and officers' insurance protection. This is yet another

7 reason why Defendants are hopelessly conflicted in making any independent determination that

8 would cause the Company to bring this action;

9          (k)     Despite Defendants' breaches of duty, the Board did not recommend that

10 any Defendant be relieved of his or her duties as director. By maintaining the *status quo* in light

11 of these breaches of duty, the entire Board failed to exercise proper business judgment and

12 therefore lacks independence;

13          (l)     Most egregiously, the Board did not require that Defendants Hill and

14 Benzing immediately disgorge all of their ill-gotten gains from their improper manipulation of

15 their stock option grants and other misconduct, did not require them to return all unexecuted stock

16 options to the Company, and did not require them to disgorge their bonuses and equity-based

17 compensation to the Company, despite their indisputable breaches of fiduciary duties, which

18 worked a direct harm to the Company. Nor did they take any other action, including commencing

19 legal proceedings, to protect the interests of the Company.

20     64.     Demand upon the shareholders of the Company would be futile and is excused

21 because the Company is a publicly traded corporation with approximately 132.87 million common

22 shares issued and outstanding and more than one million shareholders scattered throughout the

23 country. Making demand on such a number of shareholders would be impossible for plaintiffs

24 who have no way of finding out the names, addresses or phone numbers of shareholders. The cost,

25 time and effort needed to comply with possible federal proxy law application would make the

26 attempt futile.

27

28

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

65.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

66.    Director Defendants issued, caused to be issued and participated in the issuance of materially false and misleading statements to shareholders which were contained in the Company's Definitive Proxies filed on April 9, 2002, March 7, 2003, and March 12, 2004 which each misrepresented or failed to disclose, *inter alia,* the facts set forth above. By reasons of the conduct alleged herein, each Director Defendant violated Section 14(a) of the Exchange Act. The information would have been material to the Company's shareholders in determining whether to elect directors to manage their company.

67.    Plaintiff, on behalf of the Company, thereby seeks to void the election of Director Defendants based upon the misleading and incomplete proxy materials, and to recover damages caused by Defendants' failure to disclose the improper compensation described herein.

## COUNT II

### Against All Defendants for Breach of Fiduciary Duty

68.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

69.    The Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty and due care.

70.    Each of the Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision by, *inter alia,* (i) the reckless disregard with which they published the financial statements of Novellus that did not conform to GAAP; (ii) the reckless disregard with which they supervised the audits and reviews of Novellus's financial statements and internal controls and procedures; and (iii) the violation of their duties of loyalty in failing to detect, prevent and/or disclose Novellus' accounting misstatements, and the weaknesses in the internal controls and procedures of the Company, as previously described herein.

- 18 -

71.     Each Defendant also each owed Novellus a duty to test, oversee and monitor their systems of internal disclosure, financial and accounting controls, governance procedures and disclosure procedures and to ensure that they were functioning in an effective manner and in compliance with, *inter alia,* the Sarbanes-Oxley Act of 2002.

72.     The Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

73.     Each of the Defendants authorized, or by abdication of duty, permitted the stock options granted to the Management Defendants to be back-dated. These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

74.     As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Defendants have caused, and will continue to cause, the Company to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to the Company's reputation, business and good will.

75.     The Company has been directly and substantially injured by reason of the Defendants' intentional breach and/or reckless disregard of their fiduciary duties to the Company. Plaintiff, as a shareholder and representative of the Company, seeks damages and other relief for the Company, in an amount to be proven at trial.

## COUNT III

### Against All Defendants for Gross Mismanagement

76.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

77.     By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

78.     As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained and will continue to sustain

1   significant damages in the millions of dollars.

2        79.    As a result of the misconduct and breaches of duty alleged herein, the Defendants

3   are liable to the Company.

4        80.    Plaintiffs incorporate by reference and reallege each and every allegation contained

5   above, as though fully set forth herein.

6        81.    By failing to properly consider the interests of the Company and its public

7   shareholders and by failing to conduct proper supervision, the Defendants, without any valid

8   corporate purpose, have caused the Company to waste valuable corporate assets solely for the

9   financial gain of the Management Defendants.

10       82.    As a result of the waste of corporate assets, the Defendants are liable to the

11  Company.

12                                    **COUNT IV**

13                    **Against Defendants for Waste of Corporate Assets**

14       83.    Plaintiff incorporates by reference and realleges each and every allegation set forth

15  above, as though fully set forth herein.

16       84.    By engaging in the wrongdoing alleged herein, Defendants wasted corporate assets

17  by, among other things, improperly granting stock option grants, improperly manipulating stock

18  options, failing to recover improperly secured profits, damaging the goodwill and reputation of the

19  Company, and exposing the company to civil and criminal liability, for which they are liable.

20       85.    As a direct and proximate result of Defendants' wrongful conduct, the Company

21  has suffered damages in an amount to be proven at trial.

22                                    **COUNT V**

23                        **Against the Management Defendants for**
                     **Unjust Enrichment and Breach of the Duty of Loyalty**
24
         86.    Plaintiff incorporates by reference and realleges each and every allegation set forth
25
    above, as though fully set forth herein.
26
         87.    As a result of the back-dating of the options granted to them, the Management
27
    Defendants have been and will continue to be unjustly enriched at the expense of and to the
28

                                         - 20 -

1    detriment of the Company.

2        88.    Accordingly, this Court should order the Management Defendants to disgorge all

3    profits, benefits and other compensation obtained by the Management Defendants, and each of

4    them, from their wrongful conduct and fiduciary breaches described herein, and should order the

5    options held by the Management Defendants, which have not yet been exercised, to be repriced at

6    the market price of the Company's stock on the dates the Court finds that those options were

7    actually, in fact, granted.

8                                   **COUNT VI**

9           **Against the Management Defendants for Breach of Contract**

10       89.    Plaintiff incorporates by reference and realleges each and every allegation set forth

11   above, as though fully set forth herein.

12       90.    As a result of the back-dating of options granted to them, the Management

13   Defendants have violated the stock option plan which provides that the exercise price of all of the

14   stock options would be no less than the fair market value of the Company's common stock,

15   measured by the publicly traded closing price for the Company stock, on the date of the grant.

16       91.    The Company and its shareholders have been damaged by the Management

17   Defendants breach of contract.

18                              **PRAYER FOR RELIEF**

19       WHEREFORE, plaintiffs demand judgment as follows:

20       A.    Against all of the Defendants and in favor of the Company for the amount of

21   damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties,

22   gross mismanagement, waste of corporate assets and unjust enrichment;

23       B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and

24   state statutory provisions sued hereunder, including declaring the improper compensation awards

25   complained of herein to be null and void; and attaching, impounding, imposing a constructive trust

26   on or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as

27   to assure that plaintiff on behalf of the Company have an effective remedy;

28       C.    Awarding to the Company restitution from the Management Defendants, and each

1 | of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the

2 | Management Defendants as a result of the conduct alleged herein;

3 |     D.    Awarding to plaintiff the costs and disbursements of the action, including

4 | reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

5 |     E.    Granting such other and further relief as the Court deems just and proper.

6 | **JURY DEMAND**

7 | Plaintiff demands a trial by jury on all claims so triable.

8 | **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

9 | Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

10 | named parties, there is no such interest to report.

11 | Dated: May _3/_, 2006

WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ, LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
FRANCIS A. BOTTINI, JR.
RACHELE R. RICKERT

FRANCIS M. GREGOREK

750 B. Street, Suite 2770
San Diego, California 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ, LLP
GREGORY NESPOLE
DANIEL KRASNER
GUSTAVO BRUCKNER
MARTIN RESTITUYO
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653

LAW OFFICES OF JACOB T. FOGEL
JACOB T. FOGEL
32 Court Street, Suite #602
Brooklyn, New York 11201
Telephone: 718/221-5552
Facsimile: 718/875-4500

Attorneys for Plaintiff

NOVELLUS: 13368.CPT

- 22 -

I, Josh Teitelbaum, declare that I am a shareholder of Novellus Systems, Inc.
common stock and have continuously so owned Novellus Systems, Inc. common
stock since January 12, 2001.

I have reviewed the foregoing Verified Derivative Action Complaint, and
authorized its filing. Based upon the investigation of my counsel, the allegations in
the Complaint are true to the best of my knowledge, information and belief.

This Verification is made subject to the penalties of perjury under the laws of the
United States.

Dated: May 24, 2006

Josh Teitelbaum
JosHua